18-188-cv
*Vt. Ry. v. Town of Shelburne*

# In the
# United States Court of Appeals
# For the Second Circuit

August Term, 2018

Argued: November 8, 2018
Decided: March 7, 2019

Docket No. 18-188-cv

VERMONT RAILWAY, INC.,

*Plaintiff-Counter-Defendant - Appellee,*

V.

TOWNE OF SHELBURNE,

*Defendant-Counter-Claimant - Appellant,*

JOE COLANGELO, in his capacity as Town Manager and Zoning
Enforcement Officer,

*Defendant.*

Appeal from the United States District Court
for the District of Vermont
No. 2:16-cv-16 – William K. Sessions, *Judge*.

Before:     RAGGI, HALL, and SULLIVAN, *Circuit Judges*.

Appeal from a permanent injunction barring Town of Shelburne from enforcing an ordinance regulating hazardous substances and certain zoning bylaws against Vermont Railway in connection with Railway's road salt transloading facility.   The Town argues on appeal that the ordinance falls within the "police powers" exception to preemption by the Interstate Commerce Commission Termination Act ("ICCTA").   Because the ordinance imposes on rail activity restrictions that do not meaningfully protect public health and safety, it does not meet the "police powers" exception and is therefore preempted by the ICCTA.   To the extent the Town seeks to challenge the District Court's ruling that the Railway's activities do not constitute "transportation by rail carrier," that challenge is dismissed for lack of jurisdiction.   Judge Sullivan dissents in part in a separate opinion.

AFFIRMED.

CLAUDINE C. SAFAR, Monaghan Safar Ducham PLLC, Burlington, Vermont, *for Defendant-Counter-Claimant - Appellant*.

JENNIFER E. MCDONALD (Marc B. Heath, Evan J. O'Brien, *on the brief*), Downs Rachlin Martin PLLC, Burlington, Vermont, *for Plaintiff-Counter-Defendant - Appellee*.

HALL, *Circuit Judge*:

This is an appeal from a judgment entered on January 2, 2018, in the United States District Court for the District of Vermont (Sessions, *J.*), granting a permanent injunction barring the Town of Shelburne, Vermont ("the Town") from enforcing

against Vermont Railway, Inc. ("the Railway") the Town's "Ordinance Regulating the Storage, Handling and Distribution of Hazardous Substances" ("the Ordinance") and §§ 1950.1 and 1950.2(A) of the Performance Standards section of the Town's zoning bylaws. The litigation arises out of the Railway's development of property for use as a road salt transloading facility in the Town. When the Town enacted the Ordinance and then attempted to enforce it against the Railway, the Railway sought injunctive relief in the District Court. Determining that these regulations, as applied to the Railway, are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 *et seq.*, the District Court granted a permanent injunction. This appeal followed.

The issue on appeal is whether the Ordinance falls within an exception to ICCTA preemption that allows the continued application of state and local regulations affecting rail transportation if the regulations constitute a valid exercise of the local body's police powers. The District Court ruled that the Ordinance is not a valid exercise of the Town's police powers because it discriminates against the Railway and unreasonably burdens rail transportation by placing significant restrictions on the movement of rail cars and rail

3

commodities, which restrictions do not meaningfully protect public health and safety. We identify no error in either the District Court's legal analysis of the Town's police powers or its factual findings underlying that analysis, and we thus affirm the judgment of the District Court.

## I.

In late 2015, the Railway purchased a parcel of land along its main line in the Town. The Railway intended "to develop a state-of-the-art, rail-to-truck transloading facility . . . intended for the handling of bulk commodities, primarily road salt, shipped to Vermont by rail and used for deicing winter roads" ("Facility"). Appellee Br. 1–2. The Railway intended to stockpile sodium chloride (road salt) at the Facility over the summer months for distribution as needed during the winter.

When the Town attempted to enforce a pre-construction permit requirement against the Railway, the Railway sought declaratory and injunctive relief in the District Court, arguing that the ICCTA preempts the Town's local zoning regulations as applied to the Railway. Following a six-day evidentiary hearing, on June 29, 2016, the District Court entered a declaratory order that the ICCTA preempts the Town's pre-construction permit requirement, and enjoined the

4

Town from "enforcing any regulation that prevents the Railway from constructing its proposed facility." J. App. 316. That June 2016 declaratory order determined, as part of the District Court's preemption ruling, that the construction and operations of the Railway's planned salt transloading facility constitute "transportation by rail carrier" as that term is used in the ICCTA. J. App. 332–34. The District Court "reserve[d] judgment on the question of whether the ICCTA preempts other zoning regulations derived from the Town's police powers that relate to the operation of the Railway's proposed facility" and directed the Town to "indicate[] precisely which zoning regulations it intends to enforce." J. App. 317. The District Court explained that its future consideration of identified regulations would not require it to revisit the "transportation by rail carrier" ruling; rather, the court would merely evaluate whether each such regulation met the police powers exception to ICCTA preemption. J. App. 317, 343–44. The Town moved for reconsideration of the June 2016 order, and the District Court denied that motion in June 2017.

On August 21, 2017, having received input from both parties, the court entered partial final judgment on its June 2016 ruling that the Railway's activities constitute transportation by rail carrier and the ICCTA "preempts the

5

Town['s] . . . pre-construction permit requirement and related zoning regulations as to the [Facility]." Sp. App. 7–8. The Town did not appeal from that partial final judgment. Indeed, the Town had specifically indicated it did "not oppose the entry" of partial final judgment, while offering suggested language that modified the Railway's proposed partial final judgment order by more closely mirroring the District Court's June 29 declaratory order. Dkt. No. 193, 2:16-cv-16.

A few weeks earlier, on August 8, 2017, the Town had enacted the Ordinance at issue in this appeal, which the Town identified "as falling under the post-construction police powers it intend[ed] to enforce against the Railway, as requested by the Court's June 29, 2016 Order."[1] Sp. App. 7. At that time, the Facility "had been constructed and was fully operational." Appellee Br. 3; *accord*

---

[1] The Ordinance prohibits the storage of substances above certain quantities within 250 meters of a school or waterway: 550 tons of sodium chloride, calcium chloride, magnesium chloride, or potassium chloride; 2,000 gallons on hydraulic oil, diesel fuel, unleaded fuel, heating oil, propane, motor oil, natural gas, or petroleum crude oil; and 34,500 gallons of ammonia, chlorine, or hydrogen fluoride. The Facility is within 250 meters of the LaPlatte River. The Facility holds 80,000 tons of road salt. The only other road salt storage in the Town is the Town's, which holds 550 tons.

Under the Ordinance, storage facilities may be inspected by designated Town officials, and "Health Orders" may be issued to require compliance. Sp. App. 10. A fine of $800 a day would be imposed for violations, and in the event an enforcement action were brought by the Town, the fines would go up to $10,000 a day. The violator could also be responsible for any costs incurred by the Town in monitoring the site.

Sp. App. 6.[2]

About three weeks later, on September 1, 2017, the Railway moved for a preliminary injunction seeking to restrain enforcement of the Ordinance, following which the District Court held yet another evidentiary hearing. In an Opinion and Order issued on December 7, 2017, the District Court ruled that the Ordinance was also preempted by the ICCTA, and permanently enjoined the Town from enforcing it against the Railway.[3] The District Court reasoned that the Ordinance did not meet the police powers exception to preemption because (1) "the timing of its enactment, the focus and thresholds included in it, and the severe penalties permitted by it all point toward discrimination against the Railway" and (2) "the Ordinance would place significant restrictions on when and where rail cars move and when and where rail commodities are shipped and stored," which

---

[2] The Railway was required to obtain state permits before beginning construction. Pursuant to the Multi-Sector General Permit ("MSGP"), the Railway prepared a Storm Water Pollution Prevention Plan ("SWPP") and applied to the Vermont Department of Environmental Conservation for an authorization to discharge, which was granted and from which the Town did not appeal. The Facility is subject to ongoing monitoring of discharge by the State. This involves upstream and downstream monitoring of the LaPlatte River. When an increase in sodium chloride was detected in the river, it was determined the increase was due to spillage during the transloading process and improvements were made to the Facility to prevent such spillage.

[3] The District Court also held that §§ 1950.1 and 1950.2(A) of the Town's zoning bylaws were preempted because they were duplicative of the Ordinance. The Town does not address the District Court's ruling as to the zoning bylaws in its principal brief on appeal, and any challenge to that ruling is therefore waived.

restrictions "unreasonably burden rail transportation and do not meaningfully protect public health and safety." Sp. App. 16–17. The District Court entered final judgment on that order on January 2, 2018.

**II.**

As a preliminary matter, we do not have jurisdiction to revisit the District Court's earlier ruling that the Railway's activities in the Town constitute "transportation by rail carrier" under the ICCTA. That is because no appeal was taken from the August 21, 2017 final judgment reflecting that ruling. The Town appealed solely from the District Court's December 7, 2017 order and the January 2, 2018 final judgment on that order. The Town's Notice of Appeal does not identify or reference any other decision or order of the District Court. *See* Fed. R. App. P. 3(c)(1)(B) (requiring Notice of Appeal to "designate the judgment, order, or part thereof being appealed"); *see also New Phone Co. v. City of New York*, 498 F.3d 127, 131 (2d Cir. 2007) (our appellate jurisdiction "depends on whether the intent to appeal from [a] decision is clear on the face of, or can be inferred from, the notice[] of appeal").

The December 7, 2017 order does not revisit the transportation by rail carrier holdings from June 29, 2016 and June 28, 2017, discussing those rulings only to

8

provide the procedural background of the case and explain that they were now law of the case and no longer at issue: "Because the Court has already determined that the activities conducted at the facility constitute transportation by a rail carrier and are thus subject to the ICCTA's preemption clause, the Court now needs only to determine whether the [] Ordinance falls with the scope of ICCTA preemption." Sp. App. 15; *see Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (holding that, although law-of-the-case doctrine does not bind an appellate court, prior rulings by a district court are presumed to govern later district court proceedings in same case). Accordingly, we cannot infer from a Notice of Appeal that makes no mention of the District Court's June 29, 2016 or June 28, 2017 orders, much less its August 21, 2017 partial final judgment, that the Town intended to appeal from the District Court's transportation-by-rail-carrier ruling made therein. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995) (holding that we did not have jurisdiction to consider an order not mentioned in the notice of appeal). We lack "authority to waive the jurisdictional requirements of Rule 3(c)(1)(B), and our jurisdiction is limited by the wording of the notice." *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 135 (2d Cir. 2016) (internal quotation marks and alterations omitted).

9

Even if we were to assume that the earlier orders were somehow incorporated in the Town's Notice of Appeal of both the December 7, 2017 order and January 2, 2018 judgment, the Town would be barred from attempting to relitigate a question that was already definitively determined through the entry of the August 21, 2017 partial final judgment that it failed timely to appeal. *See Bowles v. Russell*, 551 U.S. 205, 210 (2007) (holding that failure to timely appeal deprives an appellate court of jurisdiction); *Cuoco v. Moritsugu*, 222 F.3d 99, 110 (2d Cir. 2000) (noting that a district court's entry of partial final judgment is immediately appealable); Fed. R. App. P. 4 ("the notice of appeal . . . must be filed with the district clerk within 30 days after entry of the judgment or order appealed from."); Andrew S. Pollis, *Civil Rule 54(b): Seventy-Five and Ready for Retirement*, 65 FLA. L. REV. 711, 722–23 (2013) (noting the "severe" consequence of failing timely to appeal a Rule 54(b) judgment: "given the time limit for appealing," a litigant who "wait[s] until the entire litigation end[s] to challenge the order [finds that he] forfeited his right to review"); *cf. Window World of Chicagoland, LLC v. Window World, Inc.*, 811 F.3d 900, 903 (7th Cir. 2016) (confronting similar issue and holding that, under both collateral estoppel and law of the case, ruling that "is immediately appealable" is barred from later appeal when litigant "gave up his chance to have the judgment

10

in [opponent's] favor set aside" at first opportunity). That the Town specifically indicated it did not oppose entry of a partial final judgment indicates at the very least the Town was aware an appealable judgment was being entered. When it did not timely appeal the partial final judgment of August 21, 2017, the Town forfeited its right to appeal the transportation-by-rail-carrier ruling here.[4]

The sole question before this Court on appeal, therefore, is whether the Ordinance meets the police powers exception to preemption by the ICCTA. We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's order and final judgment on this issue.

## III.

We review the application of preemption principles *de novo*. *Marentette v. Abbott Laboratories, Inc.*, 886 F.3d 112, 116 (2d Cir. 2018). We review factual findings for clear error. *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 62 (2d Cir. 2016).

## IV.

The only argument advanced by the Town is that "the Ordinance constitutes a

---

[4] Even if the Town could surmount this jurisdictional obstacle, however, we would reject any challenge to the ICCTA's application to the Railway's facility for the reasons ably stated by the District Court.

11

valid exercise of the Town's traditional municipal police powers and, therefore, is not preempted by the ICCTA." Appellant Br. 13. The District Court correctly determined the Ordinance is *not* a valid exercise of the Town's police powers, and we therefore affirm the District Court's grant of a permanent injunction barring the Town from enforcing the Ordinance against the Railway.

The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land[,] . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Federal preemption may "occur where compliance with both federal and state regulations is a physical impossibility, or where state law impedes the execution of the full purposes and objectives of Congress." *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 409 (2d Cir. 2013) (internal citations omitted); *see also Greater N.Y. Metro. Food Council, Inc. v. Giuliani*, 195 F.3d 100, 104–05 (2d Cir. 1999) ("Under the doctrine of preemption, . . . any state or municipal law that is inconsistent with federal law is without effect.") (abrogated on other grounds). The "most obvious" form of preemption, however, occurs "where Congress expressly states that it is preempting state authority." *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 57 (2d Cir. 1984).

The ICCTA contains such an express preemption clause. It vests the Surface Transportation Board with exclusive jurisdiction over "(1) transportation by rail carriers," and "(2) the construction, acquisition, operation, abandonment, or discontinuance of . . . tracks, or facilities," and states that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b).

We have recognized, however, that:

> not all state and local regulations are preempted by the [ICCTA]; local bodies retain certain police powers which protect public health and safety. . . . [S]tates and towns may exercise traditional police powers over the development of railroad property, at least to the extent that the regulations protect public health and safety, are settled and defined, can be obeyed with reasonable certainty, entail no extended or open-ended delays, and can be approved (or rejected) without the exercise of discretion on subjective questions.

*Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 643 (2d Cir. 2015) (internal quotation marks omitted). In *Green Mountain*, we held that "generally applicable, non-discriminatory regulations and permit requirements," such as "[e]lectrical, plumbing and fire codes, [and] direct environmental regulations enacted for the protection of the public health and safety," were the kind of regulation that could withstand ICCTA preemption. *Id*.

Under *Green Mountain*, the threshold question in our inquiry into whether a

given local regulation is a permissible exercise of the governing body's police power, such that it is not subject to preemption under the ICCTA, is whether that regulation "protect[s] public health and safety." *Id*. The District Court's finding that the Ordinance does not "achieve[] any meaningful health or safety goals" is amply supported by the record. Sp. App. 25; *see* Sp. App. 22–24. That is, the Town's experts knew of no other legislation that classified road salt as a hazardous material; the Town's own salt storage shed did not have the environmental monitoring mechanisms that were in place at the Facility; the Ordinance outlaws spillage of road salt as may happen at the Facility, but permits the spreading of road salt for the purpose of de-icing motorways, driveways, and sidewalks; and the Town itself spreads road salt throughout the winter months. Indeed, the Town's own expert admitted that the mere storage of road salt causes no environmental impact. Given this evidence, we conclude that the District Court was not clearly erroneous in finding that the Ordinance failed to promote public health and safety. Applying this factual finding in our own *de novo* review, we conclude that the Town's assertion of a police powers exception to preemption fails as a matter of law.[5] *See Green Mountain*, 404 F.3d at 643.

---

[5] The Town does not argue that the District Court's permanent injunction analysis

**V.**

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

---

was erroneous, and, having determined that the District Court's preemption analysis is sound, we do not separately analyze the District Court's imposition of a permanent injunction.

SULLIVAN, *Circuit Judge*, concurring in part and dissenting in part:

I agree with my colleagues that the Town's ordinance does not fall within the police powers exception to the ICCTA, and so I concur in Parts I, III, and IV of the majority opinion. I dissent merely with respect to its holding in Part II that we lack jurisdiction to review the district court's conclusion that the Railway's activities constitute "transportation by [a] rail carrier[]." 49 U.S.C. § 10501(b)(1).

## I. BACKGROUND

The procedural quirks of this case bear noting. On January 26, 2016, the Railway filed a complaint, seeking both a declaration that the Town's pre-construction permitting ordinance was preempted by the ICCTA and injunctive relief barring enforcement of the ordinance. On June 29, 2016, the district court entered an order finding that (1) "the construction and operation of the Railway's planned intermodal facility constitute[d] 'transportation by a rail carrier,'" and (2) the ICCTA preempted the Town's pre-construction permitting regime. Accordingly, the district court "enjoin[ed] the Town from enforcing any regulation that prevents the Railway from constructing its proposed facility." Although the Railway completed construction of its facility in June 2017, the district court did not enter partial final judgment on the June 29, 2016 order until August 21, 2017.

Meanwhile, on August 8, 2017, the Town enacted a new ordinance that

prohibited the storage of certain quantities of sodium and other chemicals within 250 meters of a school or waterway (the "Storage Ordinance"). On September 1, 2017, the Railway moved for a preliminary injunction, seeking to bar the Storage Ordinance's enforcement. The district court held a preliminary injunction hearing on September 25, 2017, but did not rule on the motion at that time. In the interim, the Court issued a TRO enjoining enforcement of the Storage Ordinance pending the preliminary injunction ruling. After resuming the hearing on November 1 and 2, 2017, the district court issued its December 7, 2017 order, which effectively granted (1) a preliminary injunction to the Railway, (2) judgment for the Railway, and (3) a permanent injunction as the remedy for the judgment.

## II. DISCUSSION

### A.

The majority first asserts that we lack jurisdiction to review whether the Railway's activities constitute transportation by a rail carrier because the Town's notice of appeal only refers to the December 7, 2017 order. According to the majority, that order discussed the district court's prior transportation-by-rail-carrier ruling "only to provide the procedural background of the case." This misreads both the relevant legal inquiry and the district court's order.

2

A party seeking a preliminary injunction must establish, among other things, that it "is likely to succeed on the merits," *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34 (2d Cir. 2010) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)), and the district court's December 7, 2017 order clearly concluded that the Railway was assured of such success under the ICCTA. But whether implicit or explicit, such a determination turned on a finding that the Railway's activities were covered by the ICCTA in the first place. Specifically, the ICCTA provides that "[t]he jurisdiction of the [Surface Transportation] Board over transportation by rail carrier . . . is exclusive" and that "the remedies provided under this part with respect to the regulation of rail transportation are exclusive and preempt the remedies provided under Federal and State law." 49 U.S.C. § 10501(b). Thus, in order for a rail carrier to succeed on its claim that the ICCTA preempts a state or local ordinance, the carrier must first show that its activities constitute "transportation by [a] rail carrier[]" such that they are subject to the ICCTA. *See, e.g., Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 103 (2d Cir. 2009); *see also New York Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 247 (3d Cir. 2007) ("The first question to which we turn is whether the activities at issue are 'transportation

3

by rail carrier,' and thus subject to the [ICCTA].").

In granting judgment and a permanent injunction on the basis of ICCTA preemption, the district court's December 7, 2017 order necessarily had to find that the Railway's activities constituted "transportation by [a] rail carrier[]." Thus, the district court's statement that it had "already determined [in its June 29, 2016 order] that the activities conducted at the facility constitute transportation by a rail carrier" merely reflects that the district court was incorporating by reference its previous legal conclusion into its December 7, 2017 order. In that regard, this case is very different from *Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995), in which we held that we lacked jurisdiction to review a prior order – not referenced in the notice of appeal – when that prior order disposed of a different claim and was only mentioned in the operative order to provide the procedural history of the case. *Id*. at 256. Here, by contrast, the finding that the Railway's activities constituted transportation by a rail carrier was a necessary first step to exercising jurisdiction and enjoining enforcement of the Storage Ordinance. The fact that the Town did not appeal the June 29, 2016 order – and its finding that the Railway's activities constituted transportation by a rail carrier under the ICCTA – cannot insulate the December 7 order's implicit adoption of that finding from appellate

4

review, any more than converting a preliminary injunction to a permanent injunction bars review of any reasoning adopted, but not articulated anew, by the order granting a permanent injunction. *Cf. All. for Open Soc'y Int'l, Inc. v. United States Agency for Int'l Dev.*, No. 15-974 (L), 2018 WL 6683523 (2d Cir. Dec. 20, 2018) (affirming permanent injunction where the underlying district court order converting the preliminary injunction to a permanent injunction merely reiterated its previous findings as to irreparable harm and success on the merits).

B.

Equally unpersuasive is the majority's alternative conclusion that, even if the December 7, 2017 order adequately ruled on the transportation-by-rail-carrier question, the Town was nonetheless "barred from attempting to relitigate [this] question" at all because it "failed timely to appeal" the August 21, 2017 partial final judgment.

The August 21, 2017 partial final judgment relied on by the majority "finalized" an injunction that barred the Town from enforcing a different, *pre-construction* ordinance. That ordinance required the Railway to submit its construction plans to the Town for approval before commencing construction on its contemplated storage facility. But by the time the partial final order was issued

5

on August 21, 2017, the storage facility was *already constructed*. Therefore, an appeal of the partial final judgment would have been pointless, since even vacatur of the injunction would not have enabled the Town to enforce its pre-construction ordinance against a facility that was already built. Put differently, by the time the storage facility was completed in June 2017, there was no justiciable controversy between the Town and the Railway that could be remedied by appellate review, as "it is axiomatic that there must be a continuing controversy capable of redress by this Court." *Haley v. Pataki*, 60 F.3d 137, 141 (2d Cir. 1995). Indeed, if the Town *had* attempted to appeal the August 21, 2017 partial final judgment, I expect we would have promptly dismissed it on the grounds of mootness. *See, e.g., Honig v. Students of the Cal. Sch. for the Blind*, 471 U.S. 148, 149 (1985) (per curiam) (holding appeal moot when tests ordered by preliminary injunction had already been carried out). Remarkably, the majority chastises the Town for not bringing such a frivolous appeal – solely to preserve its ability to challenge the district court's transportation-by-rail-carrier ruling in the event of a possible future appeal of a yet-to-be-issued injunction on a different ordinance. I am aware of no precedent that requires such wasteful litigation, and I fear that such an illogical ruling would spawn appeals of virtually every preliminary injunction in this Circuit simply

6

because risk-averse litigants would wish to avoid accusations of waiver in the event of future unfavorable rulings by the district court. For these reasons, I dissent from the conclusion that, having failed to appeal the partial final judgment, the Town forfeited its right to appeal the district court's transportation-by-rail-carrier ruling.

## C.

What the majority conclusorily acknowledges in footnote four – that it would affirm the district court's transportation-by-rail-carrier ruling anyway – is correct, and the ground on which I would affirm the district court's finding.

The Railway's facility is a transloading center designed "for unloading bulk salt arriving by rail for local distribution by truck and for temporary storage in sheds pending distribution." In other words, as the majority puts it, the facility "stockpile[s] sodium chloride . . . over the summer months for distribution as needed during the winter." The ICCTA defines "transportation" to include "a locomotive, car, vehicle, vessel, warehouse . . . yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail." 49 U.S.C. § 10102(9). In accord with the statute's definition, this Circuit's precedent leaves no doubt that a transloading facility used

7

for the storage of property constitutes "transportation." *See Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 642 (2d Cir. 2005) ("Certainly, the plain language [of the ICCTA] grants the [STB] wide authority over the transloading and storage facilities."). Accordingly, the Railway's road salt warehouse falls under the definition of "transportation" covered by the ICCTA.

Nor can there be any dispute that the Railway qualifies as a "rail carrier" under the statute. The ICCTA defines "rail carrier" to mean "a person providing common carrier railroad transportation for compensation . . . ." 49 U.S.C. § 10102(5). One distinctive feature of a common carrier is that it "undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant," *N.Y. Susquehanna*, 500 F.3d at 250, whereas a private carrier "offers services to limited customers under limited circumstances and assumes no obligation to serve the public at large," *id*. at 251. The Railway publicly advertised the rate it charged for intermodal shipments, "which indicates that it holds itself out to the public" as able and willing to ship goods for all comers. *Id*. Additionally, although the Town argued that the Railway only built the facility to aid in the transportation of one commodity – salt – evidence in the record suggests that in fact the Railway planned to "occasionally transport other goods, such as

8

lumber . . . [and] windmill blades." Such evidence works against the Town's contention that the facility was only built to store road salt provided by Cargill. Accordingly, the Railway's activities plainly constitute "transportation by [a] rail carrier[]" under the ICCTA, and I would affirm the district court in finding so.

## III. CONCLUSION

Although I disagree with the majority's waiver finding in Part II, this is ultimately an intramural dispute since we all agree that the Storage Ordinance does not fall within the police powers exception to ICCTA preemption. Accordingly, I would affirm the judgment of the district court in all respects, including that the Railway's activities constitute transportation by a rail carrier.